

November 17, 2021

**VIA ELECTRONIC TRANSMISSION**

The Honorable Merrick Garland
Attorney General
Department of Justice

The Honorable Christopher Wray
Director
Federal Bureau of Investigation

Dear Attorney General Garland and Director Wray:

    On November 6, 2021, the FBI executed a search warrant and raided the home of James O'Keefe, the founder of Project Veritas, relating to the alleged theft of Ashley Biden's diary. During the course of the dawn raid, the FBI seized cell phones and began extracting data that could have included donor information, privileged communications with lawyers and confidential whistleblowers within government.  In light of the government's conduct, the District Court for the Southern District of New York temporarily halted the government's search while considering whether to appoint a Special Master to ensure privileged and confidential information is protected from improper government access.

    The Department's heavy-handed treatment of Project Veritas is notably different from the kid-glove and deferential treatment given to Hillary Clinton and her staff during its investigation into her mishandling of highly classified information.  On October 5, 2016, I wrote to the Department with respect to an in camera review of two letters to the Department from attorney Beth Wilkinson, on behalf of her clients Cheryl Mills and Heather Samuelson.[1]  These letters were incorporated by reference into the immunity agreements for Ms. Mills and Ms. Samuelson relating to the FBI's criminal investigation into Hillary Clinton.  The letters set out the precise manner in which the Department and FBI would access and use federal records and other information stored on .PST and .OST email archives from Ms. Mills' and Ms. Samuelson's laptops.  Notably, Ms. Wilkinson and lawyers from the Department drafted these letters jointly before Ms. Wilkinson sent them to DOJ.[2]

---

[1] Letter from Charles Grassley, Chairman, Senate Judiciary Committee, Devin Nunes, Chairman, House Permanent Select Committee on Intelligence, Bob Goodlatte, Chairman, House Committee on the Judiciary, Jason Chaffetz, Chairman, House Committee on Oversight and Government Reform (Oct. 5, 2016).
[2] Briefing by Dep't of Justice staff to Committee staff (Sept. 29, 2016).

Specifically, the letters only permitted the FBI to review email archives within a limited date range, June 1, 2014, and before February 1, 2015, and so long as those emails were sent or received from Secretary Clinton's four email addresses during her tenure as Secretary of State.

The letters also provided that the FBI would destroy any records which it retrieved that were not turned over to the investigatory team. Further, the letters memorialized the FBI's agreement to destroy the laptops that contained the information to be searched. This arrangement is simply astonishing given the likelihood that evidence on the laptops were of interest to congressional investigators.

Based on reports, the Department has clearly treated these two fact patterns much differently. On the one hand with respect to Project Veritas – an organization that the Department has said is subject to the federal government's investigative power in limited circumstances and under careful scrutiny – the Department and FBI have engaged the heavy hand of the federal government against it. This is in contrast to the Clinton investigation, where the Department and FBI proceeded with the softest touch possible even though the individuals under scrutiny weren't journalists and the matter involved mishandling of highly classified national security information. Moreover, during the Clinton investigation, the government's search of records was subject to extensive communications between private counsel and government counsel to determine – in advance of any review – the scope of the information to be searched, which stands in stark contrast to the government's reported treatment against Project Veritas.

In addition, on November 4, 2021, and November 12, 2021, the New York Times published information relating to the FBI's searches of Project Veritas, including obviously privileged legal documents, calling into question whether the FBI or the Department leaked information obtained via warrant to the press.[3]

The reported fact pattern appears to implicate the Department and the FBI, yet again, in serious wrongdoing. It is critical that Department or FBI employees who participated in any misconduct in this case are not able to escape accountability, further underscoring the need for testimonial subpoena authority in light of the general practice of employees resigning before they can be interviewed.

Given the brazen and inconsistent standards employed by the Department against Project Veritas and in order to better understand the Department's and FBI's decision-making process in this matter, please answer the following no later than December 1, 2021:

---

[3] Michael S. Schmidt et al, *People Tied to Project Veritas Scrutinized in Theft of Diary From Biden's Daughter*, The New York Times (Nov. 5, 2021); Michael S. Schmidt and Adam Goldman, *Project Veritas Tells Judge It Was Assured Biden Diary Was Legally Obtained,* The New York Times (Nov. 12, 2021)

1. Please provide all records[4] with respect to the actions and efforts employed by Department and FBI officials to comply with all relevant regulations and procedures governing the acquisition of Project Veritas' information via compulsory process.
2. Please provide all search warrants and supporting documentation used to search cellphones and for physical searches of the homes of Project Veritas employees.
3. Has the Department or FBI opened any leak investigation(s) with respect to the provision of records from the case to the news media?  If not, why not?
4. With respect to the way the Department and FBI handled the Clinton investigation and Project Veritas, please explain why the Department and FBI did not afford Project Veritas the same treatment that it afforded Cheryl Mills and Heather Samuelson.

Thank you for your attention to this important matter.

Sincerely,

*Chuck Grassley*

Charles E. Grassley
Ranking Member
Committee on the Judiciary

---

[4] "Records" include any written, recorded, or graphic material of any kind, including letters, memoranda, reports, notes, electronic data (emails, email attachments, and any other electronically-created or stored information), calendar entries, inter-office communications, meeting minutes, phone/voice mail or recordings/records of verbal communications, and drafts (whether or not they resulted in final documents).