```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF WESTCHESTER
 2   - - - - - - - - - - - - - x
     PROJECT VERITAS,
 3                   Plaintiff,
          -against-    INDEX NO.: 632921-2020
 4
     THE NEW YORK TIMES COMPANY, MAGGIE ASTOR,
 5   TIFFANY HSU, and JOHN DOES 1-5,
                     Defendants.
 6   - - - - - - - - - - - - - x
               CONFERENCE
 7
               Westchester County Courthouse
 8             111 Dr. Martin Luther King, Jr., Blvd.
               White Plains, New York
 9             November 23, 2021

10   BEFORE: HON. CHARLES D. WOOD,
             Justice of the Supreme Court
11   APPEARANCES:
     For the Plaintiff:
12        CLARE LOCKE, LLP
          10 Prince Street
13        Alexandria, Virginia  22314
          BY:   LIBBY LOCKE, ESQ.
14        AND:  ANDY PHILLIPS, ESQ.
     For the Plaintiff:
15        ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN,
          FORMATO, FERRARA, WOLF & CARONE, LLP
16        81 Main Street
          Suite 306
17        White Plains, New York 10601
          BY:   ROBERT A. SPOLZINO, ESQ.
18   For the Defendants:
          CAHILL GORDON & REINDEL, LLP
19        80 Pine Street
          New York, New York  10005
20        BY:   JOEL KURTZBERG, ESQ.
          BY:   BRITNEY R. FOERTER, ESQ.
21   For the Defendant, THE NEW YORK TIMES COMPANY:
          KAREN CHESLEY, ESQ.
22        620 Eighth Avenue
          New York, New York  10018
23   ALSO PRESENT:
              Danielle Robinson, Senior Court Clerk
24            Elyse Angelico, Esq. Principal Law Clerk

25                              Nadine Kristoferson,
                                Senior Court Reporter
```

1   granted in *Omni Health*.

2       We also cited the *Surgical Design Court* case
3   where the Appellate Division, the Second Department, in
4   2005, it's a very similar fact pattern, the defendants
5   were former employees of the plaintiff and they retained
6   attorney-client privileged materials from their
7   employment, and the defendants gave the attorney-client
8   materials to a lawyer who didn't notify the plaintiff and
9   tried to make use of them for their benefit for their
10  clients in the litigation.  This was outside the formal
11  discovery process and the defendants obviously obtained
12  those materials before discovery had started, before the
13  litigation even started, again, an irregular way outside
14  the formal 3102 channels of obtaining discovery.  And,
15  again, Second Department said that those violated the
16  substantial rights of the plaintiff and ordered the
17  suppression of the materials.

18      The New York Times' own briefing can't
19  grapple -- they say it's all about the formal discovery
20  process, it's all about Article 31, Article 31 recognizes
21  both formal and informal discovery requests.

22      THE COURT:  I'm going to interrupt you just for
23  a moment to pose a question because I didn't -- in
24  reading what Mr. Kurtzberg's, his briefing last night, it
25  seems that I don't disagree with what you're saying with

1      respect to this being part of discovery, and under normal
2      circumstances, I think pretty much with any other
3      litigant, this would be a routine discovery issue that
4      would be decided in due course probably by a Court
5      Attorney Referee, although we're changing how we do
6      things around here and it will now be judges, but this
7      would be a routine discovery issue, and I don't think
8      there's much doubt that any other litigant would be
9      prohibited from utilizing that material, certainly in the
10     course of the litigation.
11              So in reading one of the cases cited by
12     Mr. Kurtzberg, which I believe was out of Suffolk County,
13     about 2007, the *Nicholson* case, and that certainly is not
14     an all fours with what we have here, but in that case
15     the -- because The New York Times is -- because both
16     sides here are media organizations, they seem to, at
17     least The Times is claiming that it has a different
18     status as a news organization.  And the case, the
19     *Nicholson* case, again, not on all fours, but it does
20     basically say that as long as the press did not
21     improperly conspire to obtain material that was covered
22     by the privilege, the press or the interveners in that
23     case, had been fed the information and the information in
24     that case, I think, was certainly more public interest
25     than in this case, but in any event, the press had been

1    fed the information by a litigant.  And in that case,
2    again, I only had an hour or so to look at it, but it
3    looks like the judge came down pretty hard on the
4    litigants but allowed the press to publish, or at least
5    report, on those materials.  I don't think they were
6    publishing the actual documents in that case.
7         So I guess the question is:  Does, by virtue of
8    the fact that we have a litigant that is also press, did
9    they get a special exemption from the rest of the rules
10   about discovery?
11        MS. LOCKE:  Directly, Your Honor, no, they
12   don't.
13        The United States Supreme Court in *Cohen versus
14   Cowles Media*, it's a 1991 case says expressly:  It is,
15   therefore, beyond the dispute that the publisher of a
16   newspaper has no special immunity from the application of
17   general laws.  This is a law of general applicability and
18   it applies regardless of the defendant's status as a
19   media entity or a nonmedia entity.
20        And I have not had an opportunity to review the
21   *Nicholson* case yet.  So I'm not familiar with the facts
22   but there's something that you said that suggested to me
23   that it may not be on all fours, which is that the press
24   had intervened into the case.  I guess my question is:
25   Was that an access, a right of access case by the press