# The Dickerson Law Group

**Brian E. Dickerson**
Partner
6846 Trail Blvd
Naples, FL 34108
Direct: 202.570.0248

Bdickerson@dickerson-law.com

January 17, 2024

**VIA CM/ECF AND EMAIL**
*Original will not follow by mail.*

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

>   Re:   *In re Search Warrants dated November 3, 2021*, 21 MAG 10547
>         Miscellaneous Case No. 21-mc-00825

Dear Judge Torres:

    I write as counsel for Petitioner, Spencer Meads ("Petitioner") in the above-captioned action. As an initial matter, I write to advise the Court that Petitioner has engaged appellate counsel who assisted in the instant filing and who will assist with Petitioner's appeal to the Second Circuit. In this regard, the time previously afforded by Your Honor for Petitioner to retain appellate counsel is greatly appreciated.

    Petitioner hereby moves this Court for an Order granting a stay of the December 21, 2023 Order [Dkt. 68], as modified by the December 29, 2023 Order [Dkt. 70] and January 4, 2024 Order [Dkt. 72], pending Petitioner's appeal to the U.S. Court of Appeals for the Second Circuit from this Court's December 21, 2023 Order [Dkt. 68], which will be noticed in this Court within the time required under Fed. R. App. P. 4. Pursuant to Fed. R. Civ. P. 62 and this Court's inherent authority to preserve the status quo during the pendency of an appeal, Petitioner requests that this Court preclude the Government's filter team from turning over any Responsive Materials (as referenced in the Court's December 21, 2023 Order) to the Government's investigative team and precluding the Government's investigative team from reviewing any Responsive Materials pending the outcome of Petitioner's appeal. As the Court is aware, fundamental to this action and Petitioner's appeal is the exercise of Petitioner's First Amendment rights as a journalist and, as is well-established, "[i]n the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm". *Gallagher v. New York State Bd. of Elections*, 477 F. Supp. 3d 19, 41 (S.D.N.Y. 2020).

## I.     Preliminary Statement

    This Court's December 21, 2023 Order (the "December 21, 2023 Order") [Dkt. 68] overruled Petitioners' objections to the Special Master's recommendation (Pet'r Public Obj., Case # 21-mc-813 ECF No. 127; Pet'r Sealed Obj., Case # 21-mc-813 ECF No. 130) and adopted the Special Master's

**The Dickerson Law Group**

January 17, 2024
Page 2 of 9

recommendation. Order at pp. 2, 22. Additionally, the December 21, 2023 Order states, in relevant part:

> By **January 5, 2024**, the Government's filter team shall turn over the Responsive Materials which are not protected by the attorney-client privilege to the Government's investigation team.

Order at p. 23 (emphasis in original).

On December 29, 2023, the Court entered its Order Granting in Part and Denying in Part Petitioner's Letter Motion (the "December 29, 2023 Order") [Dkt. 70], which states, in relevant part: "The Government's filter team shall not turn over Responsive Materials to the Government's investigation team until **January 9, 2024**. To the extent the filter team has already produced the Responsive Materials, the investigation team shall refrain from reviewing them until that date." December 29, 2023 Order at p. 2 (emphasis in original). On January 4, 2024, the Court entered its Order extending the administrative stay through January 17, 2024 (the "January 4, 2024 Order").

Petitioner intends to file a timely Notice of Appeal within the time allowed under Fed. R. App. P. 4 from this Court's December 21, 2023 Order, and now requests a stay pending that appeal. Of course, the Constitutional concerns implicated in the appeal, including issues of Petitioner's First Amendment rights, the reporters' privilege, and attorney-client privilege, are of paramount importance. Accordingly, Petitioner submits that the stay sought herein should be granted in order that the Second Circuit Court of Appeals may address Petitioner's claims on the merits. Such a stay would (a) maintain the status quo, (b) prevent Petitioner's appeal from being rendered moot, and (c) prevent irreparable harm that would be caused by the Government's filter team turning over Responsive Materials to the Government's investigative team.

## II.     Argument

### A.     Standard

The Court's authority to grant a stay is both equitable and discretionary. *See*, *e.g.*, *Hayes v. City Univ. of New York*, 503 F. Supp. 946, 962 (S.D.N.Y. 1980). When considering whether to stay a final order, this Court considers four factors:

> (1) whether the movant will suffer irreparable injury absent a stay; (2) whether a party will suffer substantial injury if a stay is issued; (3) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; and (4) the public interests that may be affected.

*Gen. Mills, Inc. v. Champion Petfoods USA, Inc.*, No. 20-CV-181-KMK, 2020 WL 915824, at *2 (S.D.N.Y. Feb. 26, 2020) (quoting *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993))

(brackets omitted). Where the Government is a party, the harm to the Government and the public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

"In weighing these factors, courts should adopt 'a sliding scale,' such that 'the necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other stay factors.'" *Gen. Mills, Inc.*, 2020 WL 915824, at *2 (quoting *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)). The Second Circuit has explained that the "probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay. Simply stated, more of one excuses less of the other." *Thapa*, 460 F.3d at 334. Here, Petitioner respectfully submits, each of the above factors weighs decisively in favor of a stay.

B.   *Petitioner Will Suffer Irreparable Harm Absent a Stay*

Declining to grant a stay while Petitioner's appeal is pending would cause irreparable injury by cementing the constitutional harm alleged by Petitioner and by mooting Petitioner's right to an appeal. Petitioner's principal objection to the Special Master's recommendation is that the Special Master erred by concluding there is no basis for declaring a First Amendment interest in protecting newsgathering activities. *See* Pet's Public Obj. at pp. 10-22 [Dkt. 127, 21-MC-00813-AT]. Citing *Zurcher v. Stanford Daily*, 436 U.S. 547 (1978), this Court concluded that Supreme Court precedent did not support Petitioner's argument that the Special Master failed to conduct the requisite First Amendment inquiry. *See* December 21, 2023 Order at pp. 8-9. Additionally, this Court determined that *Bartnicki v. Vopper*, 532 U.S. 514 (2001) did not protect the conduct that is the subject of the Government's investigation. *See id.* at p. 10. Thus, the December 21, 2023 Order rejected Petitioner's contention that various materials seized from Petitioner's devices were shielded from disclosure to the Government based upon First Amendment principles.

If the First Amendment principles described in *Bartnicki* and the other cases previously cited by Petitioner apply, then the vast majority of the Responsive Materials may not be reviewed by the Government's investigative team. Consequently, if the Government's investigative team is given access to such Responsive Materials, then Petitioner's First Amendment rights will be violated. This unlawful exercise of governmental authority violates Petitioner's constitutional rights, a harm that is presumptively irreparable. *See, e.g.*, *Gallagher v. New York State Bd. of Elections*, 477 F. Supp. 3d 19, 41 (S.D.N.Y. 2020) (stating that "[i]n the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm"); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (observing presumption of irreparable injury flowing from violation of constitutional rights); *Time Warner Cable of New York City, a division of Time Warner Ent. Co., L.P. v. Bloomberg L.P.*, 118 F.3d 917, 924 (2d Cir. 1997) (observing that "First Amendment rights can undoubtedly constitute irreparable injury (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)), and that district courts should "determine irreparable injury by considering what adverse factual consequences the plaintiff apprehends if an injunction is not issued, and then considering whether the infliction of those consequences is likely to violate any of the plaintiff's rights").

Petitioner brought this action to ensure that appropriate prophylactic measures were applied such that the Government's investigative team did not come into possession of materials gathered in

**The Dickerson Law Group**

January 17, 2024
Page 4 of 9

the course of legitimate newsgathering activities that are protected by First Amendment principles, the reporter's privilege, and the attorney-client privilege. If a stay is not imposed pending Petitioner's appeal, then the Government's investigative team will gain full access to the Responsive Materials, thereby mooting Petitioner's appeal in its entirety. *See*, *e.g.*, *Suarez v. Saul*, No. 3:19-cv-00173 (JAM), 2020 WL 5535625 at *1 (D. Conn. Sept. 15, 2020) (concluding that irreparable harm element was satisfied where a party's right to seek review of the district court's ruling requiring a new hearing to be conducted before a different administrative law judge effectively would be mooted if the court's ruling was not stayed pending appeal); *In re Adelphia Commc'ns Corp.*, 361 B.R. 337, 347-48 (S.D.N.Y. 2007) (observing that "loss of appellate rights is a 'quintessential form of prejudice'") (quoting *In re Country Squire Assocs. of Carle Place, L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996)).

Accordingly, absent a stay of this Court's December 21, 2023 Order, as modified by the December 29, 2023 and January 4, 2024 Orders, Petitioner clearly will suffer significant irreparable harm.

C.   *The Government and Public Interests Weigh in Favor of Stay Relief*

The Government's and public's interests are aligned and actually weigh in favor of staying the December 21, 2023 Order, as modified by the December 29, 2023 and January 4, 2024 Orders. Where the Government is a party, the harm to the Government and the public interest merge. *Nken*, 556 U.S. at 435.

As an initial matter, the Government's interests will not be substantially harmed by a stay precluding the Government's filter team from turning over Responsive Materials to the Government's investigative team pending the outcome of Petitioner's appeal. *See*, *e.g.*, *Gen. Mills, Inc.*, 2020 WL 915824, at *2 (observing that whether any party will suffer substantial injury is a factor to be considered in determining whether a stay is appropriate) (citing *Hirschfeld*, 984 F.2d at 39). While Petitioner believes that his appeal will be successful, in the event that Petitioner's appeal is unsuccessful the Government's investigative team ultimately will gain access to the Responsive Materials. The Government would not be substantially harmed by the time involved in the Second Circuit's resolution of Petitioner's appeal.

To the contrary, the Government's and public's interests – which as noted above are merged for purposes of the Court's analysis – actually weigh in favor of staying the December 21, 2023 Order, as modified by the December 29, 2023 and January 4, 2024 Orders. Indisputably, Petitioner's objections to releasing Responsive Materials to the Government's investigative team involve asserting First Amendment protections and, in particular, the reporter's privilege. "There is a public interest in avoiding violations of constitutional rights." *Hartford Courant Co., LLC v. Carroll*, 474 F. Supp. 3d 483 (D. Conn. 2020), *aff'd*, 986 F.3d 211 (2d Cir. 2021) (citing *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013)). Further, "securing First Amendment rights is in the public interest". *Walsh*, 733 F.3d at 488; *see also Deferio v. City of Syracuse*, 193 F. Supp. 3d 119 (N.D.N.Y. 2016) (holding that injunction served the public interest in case involving First Amendment rights); *Robar v. Vill. of Potsdam Bd. of Trustees*, 490 F. Supp. 3d 546, 574 (N.D.N.Y. 2020) (stating that "[i]t

**The Dickerson Law Group**

January 17, 2024
Page 5 of 9

is always in the public interest to protect First Amendment liberties") (quoting *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)); *D. Houston Inc. v. United States Small Bus. Admin.*, 579 F. Supp. 3d 959, 970 (S.D. Tex. 2020) (stating that "[i]njunctions protecting First Amendment rights are always in the public interest") (citing *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013)); *VAMOS, Concertacion Ciudadana, Inc. v. Puerto Rico*, 494 F. Supp. 3d 104, 143 (D.P.R. 2020) (holding that permanent injunction preserved the public's interest in protecting First Amendment rights); *Am. Freedom Def. Initiative v. Se. Pennsylvania Transp. Auth.*, 92 F. Supp. 3d 314, 330 (E.D. Pa. 2015) (observing that "many courts have held that there is a significant public interest in upholding First Amendment principles").

Accordingly, the Government's and public's interests which, for purposes of the instant analysis are merged as a matter of law, weigh in favor of staying the Court's December 21, 2023 Order, as modified by the December 29, 2023 and January 4, 2024 Orders.

D.   *Petitioner Has a Substantial Possibility of Success on Appeal*

Petitioner has a substantial possibility of success on appeal. *See Gen. Mills, Inc.*, 2020 WL 915824, at *2 (quoting *Hirschfeld*, 984 F.2d at 39). Unlike a party seeking injunctive relief, a movant seeking to stay a final order pending appeal need *not* demonstrate likelihood of success on appeal. *See*, *e.g.*, *Hayes v. City Univ. of New York*, 503 F. Supp. 946 (S.D.N.Y. 1980), *aff'd sub nom. Hayes v. Hum. Res. Admin. of City of New York*, 648 F.2d 110 (2d Cir. 1981) (stating that "the party seeking a stay pending appeal should be required to show only that its arguments raise a substantial possibility, although less than a likelihood, of success; the greater that possibility, the more justifiable is issuance of a stay").

Respectfully, the Court's December 21, 2023 Order made several findings which, Petitioner urges, are incorrect as a matter of law. First, the Court declined to recognize that pursuant to *Bartnicki v. Vopper*, 532 U.S. 514 (2001), the Special Master could only require disclosure of documents actually evidencing Project Veritas journalists' participation in theft of any information that was not already in possession of Aimee Harris and Robert Kurlander. *See* December 21, 2023 Order at p. 10. The Court concluded that *Bartnicki* does not protect documents relevant to the Government's investigation into whether Petitioner participated in the theft of Ms. Biden's journal and other items (*see id.*) and, in doing so, cited *Dem. Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 431 (S.D. N.Y. 2019) for the proposition that *Bartnicki* is premised on the significant legal distinction between stealing documents and disclosing documents that someone else had stolen previously. *Id*. In Petitioner's view, however, the December 21, 2023 Order does not give sufficient weight to this legal distinction; i.e., that *Bartnicki* protects journalistic work product and materials reflecting newsgathering activities not relating to alleged journalist participation in any theft. *See Bartnicki*, 532 U.S. at 525 (establishing the modern bedrock principle that journalists and others may publish unlawfully acquired information provided that they (a) played no part in the unlawful acquisition, (b) obtained access to the subject information lawfully, and (3) the information relates to a matter of public concern). Because large swaths of Responsive Materials have nothing to do with whether any

journalist participated in any theft of materials, pursuant to *Bartnicki* the First Amendment and the reporter's privilege preclude disclosure of those Responsive Materials to the Government's investigative team.

Second, Petitioner submits that the Court's December 21, 2023 Order incorrectly applied the privilege test for the reporter's privilege. While recognizing that the level of proof that the Government must offer to overcome the reporter's privilege depends on whether the information is considered confidential (i.e., whether the information was acquired by the journalist through a promise of confidentiality) or non-confidential (*see* December 21, 2023 Order at pp. 7-8), Petitioner submits that, in this case, the Special Master incorrectly applied the standard for non-confidential information. Here, Project Veritas and its journalists (including Petitioner) promised to keep the identities of Harris and Kurlander confidential (*id*. at p. 12); however, the Court concluded that by pleading guilty and revealing to the public that they were the ones who provided the diary and other items to Project Veritas, the confidential nature of the sources was eviscerated. Petitioner maintains that this was erroneous because the plea allocutions of Harris and Kurlander occurred on August 25, 2022 (*see id*. at p. 3), <u>after</u> the following already had occurred:

a) the search warrants had been executed and the subject devices were seized in November 2021 (*see id*. at p. 1);

b) the Special Master was appointed in December 2021 to oversee the review of materials seized during the FBI searches (*see id*.); and

c) Petitioners had lodged their objections with the Special Master in July 2022 to the specific materials seized.

Consequently, contrary to the Court's conclusion and the case law cited in the Court's December 21, 2023 Order, Petitioner was, in fact, protecting the identities of and information obtained from confidential sources at the time the search warrants were executed and for approximately eight (8) months thereafter. None of the opinions cited in the Court's December 21, 2023 Order for the proposition that heightened protection for confidential materials does not apply where a source who initially sought confidentiality publicly discloses her identity and the information secretly provided address even remotely analogous situations. *See U.S. v. Treacy*, 639 F.3d 32, 36-39 (2d Cir. 2011) (addressing testimony of reporter at criminal trial regarding matters that were never asserted to have originated from a confidential source); *Schiller v. City of New York*, 245 F.R.D. 112, 119-120 (addressing written questionnaires for which not a single respondent requested that the information therein be held in confidence); *Chevron Corp. v. Berlinger*, 629 F.3d 297, 300 (2d Cir. 2011) (holding that filmmaker's contention that the district court abused its discretion in ordering production of documentary outtake footage was unsupported where the filmmaker's making of the documentary was solicited by the sources for the purpose of telling their story and not for the purpose of independent reporting and commentary).

**The Dickerson Law Group**

January 17, 2024
Page 7 of 9

The only case cited in the Court's December 21, 2023 Order dealing with the impact of a confidential source's public disclosure of his identity and information that was provided to the journalist by the source is *U.S. v. Criden*, 633 F.2d 346 (3d Cir. 1980). *Criden* addressed whether a journalist was properly held in civil contempt for refusing to provide testimony regarding whether or not she had a conversation with a formerly confidential source who already had publicly testified that the conversation occurred and that certain matters relevant to the judicial inquiry were discussed. *Criden*, 633 F.2d at 348. Neither *Criden* nor any other case referenced in the Court's December 21, 2023 Order, however, provide that a formerly confidential source's guilty plea, along with statements made during the course of the source's plea allocution, operate to make the *entirety* of a journalist's newsgathering activities – regardless of whether they were part of the former confidential source's public disclosure – subject to the legal standard for non-confidential materials. Further, there appears to be no authority in the Second Circuit that the standard for non-confidential materials should be applied where at the time of the Government's seizure of newsgathering materials, the journalist was protecting the identity of and information gathered from confidential sources. Thus, under the particular circumstances presented in this case, Petitioner has a substantial possibility of success on appeal that the Court erred by applying the legal standard applicable to non-confidential materials, as opposed to the legal standard for confidential materials to the Responsive Materials that are not protected by the attorney-client privilege.

In light of the above, the First Amendment implications of the Court's December 21, 2023 Order are profound. Of course, the ability of the government to secure convictions by plea bargain in federal criminal prosecutions is widely acknowledged.[1] Petitioner respectfully submits that, should the legal standard applicable to non-confidential materials be applied in this case, on the basis of the guilty pleas which postdated all relevant events underlying this litigation, the government would be given a roadmap by which it could achieve an end run around longstanding First Amendment protections afforded to journalists.

Third, the Court's December 21, 2023 Order erred in determining that the Government satisfied its burden for overcoming the reporter's privilege applicable to non-confidential materials by showing that the materials (1) are of likely relevance to a significant issue in the case, and (2) are not reasonably obtainable from other available sources. *See* December 21, 2023 Order at p. 14. Regarding the first factor, the Court's Order determined, in conclusory fashion, that the "Government's investigation is focused on Petitioner's actions" and that the "Responsive materials 'go to the heart of the [potential] prosecution'". *Id*. at pp. 14-15 (quoting *United States v. Sterling*, 724 F.3d 482, 499

---

[1] In 2019, the ABA Criminal Justice Section created a Plea Bargain Task Force to address widespread criticisms of the plea bargaining system in the United States. The Task Force noted that 98% of federal convictions resolved through plea bargaining. Among the principles endorsed by the Task Force was the notion that "in general, while some difference between the sentence offered prior to trial and the sentence received after trial is permissible, a substantial difference undermines the integrity of the criminal system and reflects a penalty for exercising one's right to trial. This differential, often referred to as the trial penalty, should be eliminated." See 2023 ABA Criminal Justice Section Plea Bargain Task Force Report at https://www.americanbar.org/groups/criminal_justice/committees/taskforces/plea_bargain_tf/

**The Dickerson Law Group**

January 17, 2024
Page 8 of 9

(4th Cir. 2013)).  In doing so, the Court relied on the work of the magistrate judge in reviewing the Government's proferred affidavits to find probable cause and the Special Master's review of the materials to determine whether they were responsive to the warrants and relevant to the Government's case.  *See* December 21, 2023 Order at p. 15.  Like the Special Master's recommendation, the December 21, 2023 Order contains little, if any, analysis of the particular categories of materials contained in the seized devices or how they are likely relevant to any significant issues.  For instance, the Court did not properly analyze how materials from the seized devices describing or otherwise evidencing activities undertaken to corroborate the diary's authenticity or internal Project Veritas discussions regarding the decision of whether to publish a news story regarding the diary were likely relevant to any significant issue.  Contrary to the Court's conclusion, these specific materials are not relevant to the issue of whether Petitioner knew the diary was stolen or played any role in any theft of materials.  *Id*. at p. 16.

Similarly, with respect to the second factor (whether the materials are reasonably obtainable from other available sources), the Court's December 21, 2023 Order states in conclusory fashion that "[w]hether evidence is on Petitioners' devices is relevant to Petitioners' knowledge and intent".  *Id*. at p. 17.  Suffice to say, the breadth of the Court's sweeping conclusion defeats the entire purpose for the second prong, which is to determine whether any of the information contained within the Responsive Materials is reasonably obtainable from other sources.  The Court did not engage in a meaningful evaluation of this prong of the analysis.

Fourth, the Court's December 21, 2023 Order erred in its conclusions regarding the applicability of the attorney-client privilege.  Specifically, the Court's conclusion that the predominant purpose of communications involving Project Veritas's chief legal officer was not driven by legal concerns regarding newsworthiness (*see id*. at p. 20) ignores the overarching context in which those discussions occurred.  Similarly, the Court's conclusion that authentication was not analyzed as a legal issue (*see id*. at pp. 20-21) is belied by the purpose for which efforts were undertaken by Project Veritas personnel to authenticate the diary.  It is implicitly a legal issue whether documentation forming the basis for any news story is genuine or not and whether the publishing news organization undertook appropriate efforts to authenticate the primary written source for any given story.  The remaining portions of the Court's December 21, 2023 Order determining that the crime-fraud exception to the attorney-client privilege applied to certain documents (*see id*. at pp. 21-22) are erroneous because the purpose of those documents was legitimate newsgathering activities that are common and customary to journalistic work and do not evidence any conspiracy.

For all these reasons, Petitioner has shown a substantial possibility of success on appeal.

### III.   Conclusion

Having demonstrated that (1) Petitioner will suffer irreparable injury absent a stay, (2) the Government will not suffer substantial injury if a stay is issued, (3) Petitioner has a substantial possibility of success on appeal; and (4) the public interests weigh in favor of a stay, Petitioner

January 17, 2024
Page 9 of 9

respectfully requests that this Court stay the December 21, 2023 Order, as modified by the December 29, 2023 and January 4, 2024 Orders, along with such other and further relief this Court deems just and proper.

            Respectfully submitted,

       By:_____
            Brian E. Dickerson
            New York State Bar No. 5169958
            **THE DICKERSON LAW GROUP, P.A.**
            6846 Trail Boulevard
            Naples, FL 34108
            Tel: (202) 570-0248
            Fax: (239) 236-1260
            *bdickerson@dickerson-law.com*

            *Counsel for Petitioner, Spencer Meads*

cc:  Via Email and CM/ECF
    Robert Sobelman, Esq.
    Mitzi Steiner, Esq.
    Jacqueline Kelly, Esq.
    Eric Franz, Esq.