

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 24, 2024

**BY ECF**

The Honorable Analisa Torres
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:     *In re Search Warrant dated November 3, 2021*, 21 Misc. 825 (AT)

Dear Judge Torres:

The Government respectfully submits this letter in opposition to petitioner Spencer Meads's motion to stay the Court's December 21, 2023 Order (Dkt. 68) pending the resolution of Meads's appeal to the United States Court of Appeals for the Second Circuit (Dkt. 74). (*See* Dkt. 72). As explained below, each of the factors this Court must consider in assessing whether to impose a stay weighs against granting such relief. Accordingly, Meads's motion should be denied.

## I.     Relevant Background

On November 4, 2021, the Federal Bureau of Investigation ("FBI") executed search warrants at Spencer Meads's and Eric Cochran's residences for certain electronic devices. On November 6, 2021, the FBI executed a similar search warrant at James E. O'Keefe III's residence for cellphones. The Government obtained the search warrants as part of an ongoing grand jury investigation (the "Investigation") into the theft and interstate transportation of certain property stolen from an individual (the "Victim"). The warrants were supported by detailed affidavits and authorized by a federal magistrate judge, who found probable cause to believe that the subject premises and the devices therein contained evidence of federal crimes, including conspiracy to transport stolen property across state lines and interstate transportation of stolen property.

On December 8, 2021, this Court appointed the Special Master to "oversee the review of the materials" seized pursuant to the aforementioned search warrants. *In re Search Warrant dated Nov. 5, 2021*, No. 21 Misc. 813 (AT), 2021 WL 5845146, at *2 (S.D.N.Y. Dec. 8, 2021).[1] Specifically, the Court directed the Special Master to conduct "an initial review of the extracted materials to determine what materials are responsive to the search warrants," with a subsequent

---

[1] Unless otherwise noted, case text quotations omit all internal quotation marks, citations, and previous alterations.

filter review to be conducted by the Government's filter team. *Id.* The Court further provided that the filter team—after reviewing the responsive materials to determine if any should be withheld from the investigative team—should release the materials to the Petitioners, who would then have the opportunity to raise any objections. *Id.* The Court directed the Special Master to resolve any disputes and then to provide the Responsive Materials which were not privileged to the investigative team. *Id.*

On March 21, 2023, after reviewing the Petitioners' objections to the Government filter team's determinations and receiving briefing from the parties, the Special Master issued her Report and Recommendation (the "R&R"). *In re Search Warrant Executed on Nov. 5, 2021*, No. 21 Misc. 813 (AT), 2023 WL 3005726 (S.D.N.Y. Mar. 21, 2023).

On December 21, 2023, after reviewing the Petitioners' objections to the R&R and receiving briefing from the parties, this Court issued an Order overruling the Petitioners' objections and adopting the R&R. *In re Search Warrant Dated Nov. 5, 2021*, No. 21 Misc. 813 (AT), 2023 WL 8868371 (S.D.N.Y. Dec. 21, 2023) (the "Order"). The Order directed the Government's filter team to turn over the Responsive Materials which were not protected by the attorney-client privilege to the Government's investigative team by January 5, 2024. *Id*. at *11.

On December 29, 2023, at Meads's request, this Court directed the Government's filter team to refrain from turning over Responsive Materials to the Government's investigation team until January 9, 2024, to permit Meads time in which to determine whether to appeal the Order. (Dkt. 70). On January 4, 2024, again at Meads's request, this Court imposed an administrative stay of the Order pending the resolution of Meads's motion to stay the Order pending appeal. (Dkt. 72).

On January 17, 2024, Meads filed the instant motion to stay the Order pending appeal. (Dkt. 75 ("Mot.")). On January 24, 2024, James O'Keefe and Eric Cochran wrote to the Court to join in Meads's motion. (Dkt. 77, 78).

## II.   Applicable Law

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). "It is instead an exercise of judicial discretion, and the propriety of its issue is dependent upon the circumstances of the particular case." *Id*. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id*. at 433-34.

Courts consider four factors in deciding whether to grant a stay of an order pending appeal:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceedings; and (4) where the public interest lies.

*United States v. Grote*, 961 F.3d 105, 122-23 (2d Cir. 2020). The first two factors are the "most critical." *Nken*, 556 U.S. at 434. With respect to the first factor, "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Id.* (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)). And "simply showing some possibility of irreparable injury fails to satisfy the second factor." *Id.* at 434-35. The third and fourth factors "merge when the Government is the opposing party." *Id.* at 435. "The degree to which a factor must be present varies with the strength of the others; 'more of one [factor] excuses less of the other.'" *S.E.C. v. Daspin*, 557 F. App'x 46, 48 (2d Cir. 2014) (quoting *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)).

Where these factors weigh against the issuance of a stay, courts have denied stays pending appeal of orders requiring disclosure of documents or testimony over which a party had asserted privilege. *E.g.*, *Rubin v. United States*, 524 U.S. 1301, 1301-02 (1998) (Rehnquist, C.J.) (denying motion for stay pending appeal of an order requiring enforcement of subpoenas seeking information over which the Secretary of the Treasury had asserted executive privilege); *In re Cnty. of Erie*, 473 F.3d 413, 417 (2d Cir. 2007) (referencing prior motions panel order denying motion for stay pending appeal of an order requiring disclosure of communications over which a party had asserted attorney-client privilege); *Doe v. Zucker*, No. 17 Civ. 1005 (GTS), 2021 WL 3046744 (N.D.N.Y. July 20, 2021) (denying motion for stay pending appeal of an order requiring disclosure of documents over which defendant had asserted attorney-client privilege); *Matter of Grand Jury Subpoenas of Clay*, 603 F. Supp. 197, 199 (S.D.N.Y. 1985) (referencing prior district court order denying motion for stay pending appeal of an order requiring enforcement of a subpoena seeking information over which the subpoena recipient had claimed spousal privilege).

## III.    Discussion

### A.    Meads's Appeal Is Unlikely to Succeed on the Merits

Meads's appeal is highly unlikely to succeed on the merits.[2] Meads suggests, citing to a district court ruling issued in 1980, that he needs only show that his arguments "raise a substantial possibility, although less than a likelihood, of success" on the merits. (Mot. 5 (citing *Hayes v. City v. City Univ. of New York*, 503. F. Supp. 946, 962 (S.D.N.Y. 1980)). That is not the applicable standard. As both the Supreme Court and the Second Circuit have stated, a party seeking a stay of a court order pending appeal must "ma[k]e a strong showing that he is likely to succeed on the merits." *Nken*, 556 U.S. at 434; *Grote*, 961 F.3d at 122. Under either the applicable legal standard or Meads's out-of-date proposed standard, however, this factor weighs heavily against the issuance of a stay pending appeal.

Meads first argues that this Court failed to appropriately weigh the Petitioners' argument that, pursuant to *Bartnicki v. Vopper*, 523 U.S. 514 (2001), the Special Master should have only required the disclosure to the Government's investigative team of documents that evidenced the Petitioners' participation in the "theft of any information that was not already in the possession of Aimee Harris and Robert Kurlander." (Mot. 5). The Court's Order specifically addresses this

---

[2] For purposes of opposing the instant motion, the Government assumes *arguendo* that Meads may properly appeal the Order. The Government, however, reserves its right to challenge the appealability of the Order before the Second Circuit.

exact issue, concluding that *Bartnicki* protects a "law-abiding possessor of information" even where the publisher received information from a source who obtained it unlawfully. *In re Search Warrant Dated Nov. 5, 2021*, 2023 WL 8868371, at \*5. Here, of course, "the Government is investigating whether Petitioners *participated* in the theft of the Victim's journal and other items." *Id*. Despite Meads's claim to the contrary (Mot. 5), this Court's ruling expressly and carefully distinguished involvement in the illegal conduct—which categorically is not protected under *Bartnicki*—and the passive receipt of information that was obtained unlawfully without the involvement of the passive recipient, which is protected. *See id*. This Court was manifestly correct in its application of *Bartnicki*, Meads points to no authority to the contrary, and his novel proposal for an unprecedented and expansive reinterpretation of *Bartnicki* is highly unlikely to gain more traction on appeal than it did before either the Special Master or this Court.

Meads next argues that the Order incorrectly applied the test for the qualified journalists' privilege by treating the information provided by Harris and Kurlander as "non-confidential." (Mot. 6). This argument is meritless. As Meads acknowledges, Harris and Kurlander have publicly disclosed their identities (and their conduct) by pleading guilty. (Mot. 7). That the guilty pleas occurred during the pendency of these proceedings is of no matter. Even if the Petitioners initially acquired information under an expectation of confidentiality, there now can be "no issue of betrayal of a promised confidence." *In re Search Warrant Dated Nov. 5, 2021*, 2023 WL 8868371, at \*6 (quoting *Chevron Corp. v. Berlinger*, 629 F.3d 297, 307 (2d Cir. 2011)); *see also United States v. Criden*, 633 F.2d 346, 358 (3d Cir. 1980) ("[D]efendants probably should be required to prove less to obtain the reporter's version of a conversation already voluntarily disclosed by the self-confessed source than to obtain the identity of the source itself."). Indeed, this Court carefully considered and correctly rejected the Petitioners' argument that it should disregard the guilty pleas. *In re Search Warrant Dated Nov. 5, 2021*, 2023 WL 8868371, at \*6. Moreover, as this Court noted, it is not limited to information in the public record and also properly considered other information in its possession regarding Harris and Kurlander's decision to identify themselves. *Id*. at \*7. And Meads now points to no legal authority suggesting this Court's reasoning on that point was somehow flawed. Finally, as this Court noted, the Petitioners failed to identify any information that was provided under a promise of confidentiality that remains confidential, and Meads still has not done so. *Id*.

Meads's third and final argument suggests that this Court erred in finding that the Government met its burden to overcome the qualified journalists' privilege with respect to non-confidential materials. (Mot. 7). He is wrong. Meads essentially disagrees with the Special Master's findings that the Responsive Materials are relevant to a significant issue in the case, and with this Court's adoption of those findings. (*Id*.). This Court correctly concluded that the Responsive Materials go "to the heart" of a potential prosecution because "they will help the Government and any grand jury to determine 'whether crimes have been committed and who committed them,'" *In re Search Warrant Dated Nov. 5, 2021*, 2023 WL 8868371, at \*7 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 691 (1972)). Contrary to Meads's suggestion otherwise, it is entirely understandable and proper that this Court's Order did not detail each document found to be responsive, but rather explained the general reasoning applying to the full group. Meads does not now raise any serious challenge to this Court's conclusions. Indeed, as this Court noted, the Special Master completed a thorough review that was "far from pro forma." *Id*. at \*7 n.14. Similarly, the Court's conclusion that the Responsive Materials found on the Petitioners' devices

is relevant to knowledge and intent and not obtainable elsewhere, *id.* at *8, is essentially self-evident and extraordinarily unlikely to be reversed on appeal. This Court was not required to include in the Order a document-by-document analysis following the Special Master's review to resolve the Petitioners' objections, and Meads cites no authority to the contrary.[3]

In sum, Meads has not made—and cannot make—a "strong showing" that his appeal is "likely to succeed on the merits," *Grote*, 961 F.3d at 122-23, or even (under the outdated standard Meads proposes) that there is a "substantial possibility" of such an outcome, *Hayes*, 503. F. Supp. at 963.

### B. Meads Will Not Be Irreparably Injured Absent a Stay

Meads will not be irreparably injured absent the imposition of a stay of the Order. Meads argues, without citing any authority to support the proposition, that his appeal would be moot if this Court declines to stay the Order. (Mot. 3-4). Meads is wrong. In *In re County of Erie*, the Second Circuit held that, even though a motions panel had denied a stay of an order requiring disclosure of communications later found to be privileged by the merits panel, the appeal was not moot because "the privilege can nevertheless be vindicated by preventing the use of the documents during further discovery (including, for example, in depositions, interrogatories, document requests and pretrial motions) and at trial." 473 F.3d at 417. Similarly, in *Doe v. Zucker*, the district court, in the course of denying a stay pending appeal, held that disclosure would "not moot" an appeal because, if the documents at issue "were found to be covered by the attorney-client privilege on appeal, the disclosure of any privileged information could be remedied through multiple avenues, including (a) redaction of the portions of the documents that contain privileged information for use on substantive motions or a trial, or (b) an order that Plaintiff is not permitted to use those documents on substantive motions or at trial." 2021 WL 3046744, at *3. Here, in the highly unlikely event that Meads prevailed on appeal, the Court could similarly fashion an appropriate remedy to vindicate any applicable privilege and prevent the use of any privileged materials in any proceeding, such as a criminal trial. Meads's claim that he would suffer irreparable injury upon disclosure is thus baseless.

Meads also argues that, if his appeal is successful, disclosure of the Responsive Materials to the Government's investigative team in advance of the resolution of that appeal would violate his First Amendment rights and constitute irreparable harm. (Mot. 3-4). This argument is meritless. Meads cites cases stating the obvious and noncontroversial proposition that the violation of a constitutional right, including a right under the First Amendment, presumptively constitutes irreparable harm. (Mot. 3 (citing cases)). However, to the extent that presumption might apply here, it is easily rebutted for the reasons discussed in greater detail above: the Special Master and this Court have already concluded that no constitutional violation will flow from the disclosure of the Responsive Materials to the Government's investigative team, and there are concrete steps that the Court can take to vindicate Meads's rights in the highly unlikely event that he is successful on appeal. In addition, the disclosure of the Responsive Materials will not reveal the identity of any confidential sources, which is the concern at the core of the qualified journalists' privilege and

---

[3] This applies equally to the Court's determinations with respect to attorney-client privilege. *See* Mot. 8.

related First Amendment jurisprudence.  *See In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982).  As this Court recognized, the sources at issue in this matter have publicly revealed their own identities, and therefore the Petitioners "are not 'protecting the identity of any source.'" *In re Search Warrant Dated Nov. 5, 2021*, 2023 WL 8868371, at *6 (quoting *United States v. Treacy*, 639 F.3d 32, 42 (2d Cir. 2011)).  Meads's twice-rejected, meritless claims under the First Amendment are no basis for the issuance of a stay.

### C.  The Issuance of a Stay Will Substantially Injure the Government and Is Against the Public Interest

The issuance of a stay of the Order will substantially injure the Government.  The Responsive Materials were seized from the Petitioners in early November 2021.  In December 2021, this Court, after acknowledging that "the Southern District prosecutors have integrity and decency, and the filter team could conduct the review with the utmost integrity," exercised its discretion to appoint a Special Master "because it is important that the procedure adopted not only be fair but also appear to be fair," and to "help to protect the public's confidence in the administration of justice."  *In re Search Warrant Dated Nov. 5, 2021*, 2021 WL 5845146, at *2. The Special Master's rigorous implementation of a robust protocol and this Court's careful, *de novo* review of the Special Master's determinations have been manifestly fair and demonstrated to the public that the Petitioners have received a lengthy process that vigilantly guarded against what Petitioners claimed were inappropriate seizures of potentially privileged materials.  However, while the process appears have to functioned as this Court intended, it has delayed the Government's investigative team from accessing the Responsive Materials for more than two years.  Even where a Government filter team is employed, the Government's investigative team frequently obtains access to the filtered materials within a few weeks of the search (or, at most, a few months if the parties have privilege disputes for a court to resolve).  Here, the unusually lengthy delay has already significantly prejudiced the Government's ongoing investigation, and any further delay will substantially injure the Government.

The key events at issue in the Government's ongoing investigation took place in September 2020—more than three and a half years ago.  (*See* Dkt. 2 ¶¶ 8-20, 23, *United States v. Aimee Harris and Robert Kurlander*, 22 Cr. 457 (LTS)).  As in any investigation, the Government has relied upon witnesses in addition to other types of evidence.  The recollections of those witnesses may have and likely will continue to fade over the course of time.  To the extent those witnesses—or newly identified witnesses—may need to testify before the grand jury regarding the Responsive Materials or, in the event additional charges are brought, at a trial, the Government will be severely prejudiced by the additional delay.  Moreover, a criminal defendant surely would take advantage of the delay in an adversarial proceeding, while it is unlikely a jury would be advised that the delay was not occasioned by the Government.

The Government also has serious concerns about completing its investigation in advance of the expiration of the applicable statute of limitations, which likely would be five years.  *See* 18 U.S.C. § 3282.  The timing of the Second Circuit's resolution of Meads's impending appeal is uncertain, but, if this Court were to impose a stay, the appeal would add at least several months'

delay, if not more, to the Government's completion of its investigation.[4]  Depending on the contents of the Responsive Materials, the Government may need to take additional investigative steps—whether gathering more documentary evidence or interviewing additional witnesses—in order to understand the materials and place them in proper context.  It is also possible that the Responsive Materials provide investigative leads that the Government may need to act on in order to complete its investigation, some of which might require a substantial amount of time to undertake.  Thus, any further delay could permanently and fatally damage the Government's investigation from being completed during the time period imposed by law.

The public interest is also not served by a stay of the Order.  The Government respects this Court's judgment that it was in the public's interest to appoint a Special Master in the circumstances that were presented in November 2021.  However, the public interest in fairness and the appearance of fairness have been more than satisfied by the lengthy and robust process that the parties have navigated before the Special Master and this Court over the past 26 months.  Indeed, there can be no doubt in the informed public's consciousness that the Petitioners received serious and thoughtful consideration by both the Special Master and this Court.  At this juncture, after both the Special Master and this Court carefully considered the Petitioners' claims—on a document-by-document basis—the public's interest is in permitting the Government's investigative team to promptly review the lawfully seized Responsive Materials and move forward with its investigation without further delay.  As the record shows, two defendants have already pled guilty in connection with this investigation. It is now in the public interest for the Government to complete its investigation and timely determine whether additional charges are warranted to hold others accountable for their criminal conduct.[5]  *See Branzburg*, 408 U.S. at 700 ("[T]he investigation of crime by the grand jury implements a fundamental governmental role of security the safety of the person and property of the citizen.").

---

[4] *See U.S. Court of Appeals—Median Time Intervals in Months for Cases Terminated on the Merits, by Circuit, During the 12-Month Period Ending Sept. 30, 2022*, https://www.uscourts.gov/sites/default/files/data_tables/jb_b4_0930.2022.pdf (median interval of 12.2 months from filing of a notice of appeal to last opinion or final order in the Second Circuit).

[5] The lengthy list of citations in Meads's motion to decisions relating to the use of injunctions to protect First Amendment rights (Mot. 4-5) are entirely inapposite, as both the Special Master and this Court have already determined that seizure of the Responsive Materials by the Government would not violate the Petitioner's First Amendment rights.

## IV.    Conclusion

For the foregoing reasons, Meads's motion, joined by O'Keefe and Cochran, should be denied, and this Court should authorize the Government's filter team to promptly provide the Responsive Materials which are not protected by the attorney-client privilege to the Government's investigative team.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: _Jacqueline Kelly_____
Jacqueline Kelly
Robert B. Sobelman
Mitzi Steiner
Assistant United States Attorneys
(212) 637-2456/2616/2284

Cc: All Counsel of Record (by ECF)